IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

Reginald C. Sweat, #257472,     )  CIVIL ACTION NO: 9:08-3095-HFF-BM
                             )
           Plaintiff,     )
                             )
v.                            )  **REPORT AND RECOMMENDATION**
                             )
Harold Walker, Officer Williams,    )
and Lt. Buford,                )
                             )
           Defendants.    )
_____)

        This action has been filed by the Plaintiff, <u>pro se</u>, pursuant to 42 U.S.C. § 1983.

Plaintiff, who is currently incarcerated at the Kershaw Correctional Institution (part of the South

Carolina Department of Corrections), alleges that his constitutional rights were violated by the

named Defendants while he was a pre-trial detainee at the Alvin S. Glenn (Richland County)

Detention Center.

        The Plaintiff filed a motion for summary judgement pursuant to Rule 56,

Fed.R.Civ.P., on May 5, 2009.[1]  The Defendants thereafter filed their own motion for summary

judgment on May 19, 2009.  As the Plaintiff is proceeding <u>pro se</u>, a <u>Roseboro</u> order was entered by

the Court on May 20, 2009, advising Plaintiff of the importance of the Defendants' motion for

summary judgment and of the need for him to file an adequate response.  Plaintiff was specifically

---

[1]Plaintiff had previously filed a motion for summary judgment on January 16, 2009, which
was denied by Order of the Court filed April 10, 2009.



advised that if he failed to adequately respond, the Defendants' motion may be granted. Defendants also filed a response in opposition to Plaintiff's motion for summary judgment on May 26, 2009.

Plaintiff filed responses to the Defendants' motion for summary judgment on May 27, 2009, June 1, 2009, June 4, 2009 and June 8, 2009. Defendants' filed a reply memorandum on June 8, 2009, following which Plaintiff filed a Sur Reply on June 15, 2009, as well as another document styled "motion for summary judgment" on June 16, 2009, but which really just made additional arguments in favor of his claims. Defendants further filed a reply memorandum on July 6, 2009, and Plaintiff filed an additional reply on July 13, 2009.

These motions are now before the Court for disposition.[2]

### Background

Plaintiff alleges in his verified amended complaint[3] that on May 12, 2008 while exiting the shower at the Alvin S. Glenn Detention Center he slipped on a slippery surface outside the shower, causing him to fall backwards and hit his head and back against the wall. Plaintiff alleges that he suffered a bruised back and a lump on his head as a result of this fall, which could have been avoided if rubber place mats had been placed outside the shower. Plaintiff alleges that as a result of this fall, he suffers constant pain in his back and neck. Plaintiff alleges that the

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The parties have filed motions for summary judgment. As these are dispositive motions this Report and Recommendation is entered for review by the Court.

[3]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.



Defendant Walker is "over the maintenance department here at Alvin S. Glenn Detention Center .
. . ."

Plaintiff further alleges that on September 4, 2008 a small snake was found in the
food inmates were served at the Detention Center. Plaintiff alleges that the food at the Detention
Center is prepared in large containers, "meaning we all suffer from being served from the same
fixing." Plaintiff alleges that after the snake was found, the Defendant Bufford continued to allow
the food to be served by the Defendant Williams.

Plaintiff also complains about how grievances are handled at the Detention Center,
and seeks monetary damages. <u>See</u> <u>generally</u> Verified Amended Complaint.

In support of his motion for summary judgment, Plaintiff has submitted two
declarations (Court Docket Nos. 57 and 58). The first declaration deals with a "blackout" Plaintiff
states he suffered on April 23, 2009 while in the State Prison SMU. Plaintiff alleges that this was
"due to the fact [that] I suffer from post traumatic neurosis with a depressive reaction, caused by my
back and neck injury . . . .". In his second declaration, Plaintiff complains that the Defendant
Bufford did not do a "thorough investigation" before deciding to serve the food in which the snake
was found. Plaintiff states that Bufford showed "callous disregard towards inmate safety by not
discarding the food and having another serving prepared . . . .".

As attachments to their motion for summary judgment, the Defendants have
submitted several affidavits as well as other exhibits. The Defendant Curtis Bufford has submitted
an affidavit wherein he attests that on September 4, 2008 he received a call from the Defendant
Williams around the time breakfast was being served to inmates. Bufford attests that he reported
to the dorm, where Williams showed him the food tray of inmate Antonio Nelson. There was a



small snake mixed into the food on Nelson's tray. The snake was dead, and appeared to be in normal condition. Bufford attests that he became suspicious when he noticed the snake was located in the grits portion of the tray but was covered in eggs. The grits alone would not have been sufficient in quantity to cover the snake, and Nelson had mixed his eggs and grits together. Bufford attests that it was clear to him that the snake had been placed into the tray after the tray was served, as it had clearly not been cooked in with the grits since no grits were attached to it and the skin of the snake showed no evidence it had been placed in scalding hot food and cooked. Bufford attests that he also noticed a group of inmates in the dorm laughing about the event, and that based upon his observations of the snake itself and the inmates in the dorm, he was certain the snake was placed in the tray by an inmate. Bufford attests that he told the other inmates to check their trays to make sure they were okay, and ordered Nelson to take another tray.

Bufford attests that he did not speak to the Plaintiff, nor did Plaintiff voice any concerns to him or complain that the food violated his religious beliefs.[4] Bufford attests that he then took the food tray with the snake back to the administration wing, where he took pictures of the tray and the snake. See also Exhibit 8 to Bufford Affidavit. Bufford attests that, upon examination, a portion of the snake's body had been punctured or smashed, further confirming his suspicion that the snake did not die from being cooked in the food. Bufford attests that the video footage of the dorm around the time Nelson complained about his food tray was checked, and that although he has not seen the video, he has been informed by administrative officers that an inmate killed a snake in the recreational yard and brought it into the dorm. Bufford attests that, following this incident, he was not aware of the Plaintiff missing any meals as a result of stress. See generally Bufford

---

[4]Plaintiff is a Muslim.

Affidavit, with attached exhibit.

The Defendants have also submitted an affidavit from Jeanne Shull, a Sergeant at the Detention Center. Shull attests that she has reviewed the surveillance video for the dorm, and that the surveillance video of September 3, 2008 shows inmate Antonio Nelson finding something in the far area of the recreation yard, at which time a majority of the inmates gathered around him. Nelson is then seen stomping on something on the ground, putting it in a towel or tee shirt, and leaving the area. A surveillance video of September 4, 2008 of the food service area during breakfast shows Nelson complaining to the Defendant Williams about his food tray, at which time Williams observes a small snake in the food tray and calls the Defendant Bufford, his supervisor, to the dorm. Shull attests that the video shows Nelson laughing while the officers look at the food tray, and that the inmates in the dorm are seen laughing throughout the time Williams and Bufford are observing the food tray. Shull attests that, based on these video tapes, the administration concluded that Nelson placed the snake in his food to cause a stir in the dorm. Shull further attests that the snake was kept for evidentiary purposes, and that it had not been cooked as evidenced by the clear eyes, condition of its skin, and lack of burns or scarring. Further, the snake was damaged in the mid-section by a puncture or a smash wound consistent with being stomped upon by Nelson. See generally Shull Affidavit.

The Defendant Williams has also submitted an affidavit wherein he attests that on September 4, 2008, inmate Antonio Nelson came up to the officer's desk with his tray. Williams attests that Nelson was laughing and told him to look in his tray, which was placed on his desk. Williams attests that he observed a small snake in the food. Williams attests that initially the snake startled him before he realized it was dead, and that several of the inmates around the desk laughed



about his reaction. Williams attests that the food in the tray had apparently been stirred to cover the snake, with the eggs and grits being mixed together. Williams attests that it was obvious to him that the snake had not been cooked with any of the food, since it's skin did not appear to be burned or scalded in any way. Williams attests that he radioed Bufford, his immediate supervisor, and when Bufford arrived he gave the inmates an order to stir their food to make sure it was okay. He then took the food tray from the dorm. Williams attests that Plaintiff's tray did not have a snake in it, nor did Plaintiff make any complaints regarding his food. See generally Williams Affidavit.

The Defendant Harold Walker has submitted an affidavit wherein he attests that he is the facility manager at the Alvin S. Glenn Detention Center. Walker attests that the detention center employs several custodial employees to keep the floors clean. Walker further attests that inmates shower at approximately the same time, and therefore a high volume of showers take place within a short time frame. Walker attests that while shower drains may clog because of the number of inmates who use the showers consecutively, he is not aware of any significant problem with clogged showers. Further, inmates have daily access to cleaning supplies to clean the showers, including items and supplies designed both to prevent clogs and to unclog drains. Walker attests that the custodial employees do not clean the inmate's showers on a daily basis, nor do the showers require rubber mats on the floors.

With respect to food, Walker attests that he does not prepare the food at the detention center, but is familiar with the kitchen area. Walker attests that the uncooked grits are either kept in their original bags or are poured into large bins with secured lids, with the bins then being poured directly into a large pot of boiling water. Walker attests that a snake cannot get into either the bags or the bins at any time, and that the snake would not be in the bin of grits nor would the snake be in



a pot of boiling water. Further, inmate food trays do not have partitions deep enough to conceal a snake under any food, and a kitchen worker would have clearly seen the snake in the tray when preparing the food for service and would not have served the tray. See generally Walker Affidavit.

Finally, the Defendants have submitted an affidavit from Kathryn Harrell, who attests that she is the Assistant Director at the detention center. Harrell attests that she has reviewed Plaintiff's inmate file, a copy of which is attached to her affidavit as Exhibit A. Harrell attests that the detention center has a grievance system that allows inmates to file written complaints regarding the facility or its operation, including complaints relating to alleged unprofessional or abusive actions of staff members. Harrell attests that as part of the grievance system, inmates may appeal the staff response to the assistant director or the assistant director's designee, and that the detention center's grievance procedure is available to all inmates, regardless of their status, with inmate grievances being kept within the inmate's file. Harrell attests that Plaintiff has filed numerous grievances while housed at the detention center, but that she is not aware of any grievance he has filed referencing the showers at the detention center.

Harrell further attests that she has reviewed Plaintiff's medical records, a copy of which are attached to her affidavit as Exhibit B. Harrell attests that to receive medical care, an inmate simply has to fill out a sick call request form, and medical care will be provided. See generally Harrell Affidavit, with attached exhibits.

With respect to evidence submitted by the Plaintiff, Plaintiff submitted a grievance form dated May 27, 2008 as an attachment to his amended complaint, wherein Plaintiff states that he has been seen by a physician for his complaints of back and neck problems but feels like the staff is neglecting his complaints and trying to cover up their negligence. There is no response noted on



this grievance form. As attachments to his first motion for summary judgment filed January 16, 2009, Plaintiff attached a copy of a grievance dated September 20, 2008 wherein Plaintiff is generally complaining about the conditions of his confinement. This grievance shows a response date of September 25, 2008 advising Plaintiff of who to contact about maintenance problems, including to have an area sprayed for complaints of ants or spiders, and also advising him how the disciplinary procedure works. A second grievance form dated September 18, 2008 shows Plaintiff complaining about how the grievance system works, with a response dated September 24, 2008, discussing generally who is in charge of the grievance system and how it works. Finally, Plaintiff has attached a grievance form dated September 26, 2008, wherein Plaintiff is complaining about the snake being found in the food, and asking for the full names of two officers "for [his] complaint in civil court . . . .". This grievance has a response date of October 8, 2008, stating "the snake did not come from the kitchen. It was place[d] on the tray by someone after the tray left the kitchen."

As attachments to his memorandum opposing the Defendants' motion for summary judgment, Plaintiff has submitted copies of numerous grievances, including seven grievances filed in the month of May concerning complaints of back and neck pain and about the medication he is receiving, with one of the grievances (dated May 20, 2008) complaining about why Plaintiff is being billed for medication for injuries sustained when he fell in the shower. None of these grievances show any response from prison authorities. Plaintiff's exhibits also include one grievance dated September 18, 2008, wherein Plaintiff is complaining about the grievance system, with a response date of September 24, 2008 discussing who is in charge of the grievance system and how the grievance system works.



## Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

## I.

Defendants initially argue, inter alia, that this action should be dismissed because Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit. Pursuant to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions[5] under section 1983

---

[5]There is no definition for the term "prison conditions" contained in § 1997e. The Sixth Circuit utilizes a definition derived from 18 U.S.C. § 3262:

> [T]he term "civil action with respect to prison conditions" means any civil proceeding arising under federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of

(continued...)



of this Title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Through the enactment of this statute, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001); <u>see Porter v. Nussle</u>, 534 U.S. 516 (2002); <u>Jones v. Smith</u>, 266 F.3d 399 (6th Cir. 2001) [exhaustion required even though plaintiff claimed futility]; <u>Larkin v. Galloway</u>, 266 F.3d 718 (7th Cir. 2001) [exhaustion required even though plaintiff claimed he was afraid]; <u>see also</u> <u>Claybrooks v. Newsome</u>, No. 00-7079, 2001 WL 1089548 (4th Cir. Sept. 18, 2001) (unpublished opinion) [applying <u>Booth v. Churner</u> to affirm district court's denial of relief to plaintiff]. Accordingly, Defendants are correct that, before Plaintiff may proceed on his claims in this Court, he must first have exhausted the administrative remedies that were available to him at the detention center.

The Defendants have the burden of showing that Plaintiff failed to exhaust his administrative remedies. <u>See Anderson v. XYZ Correctional Health Services, Inc.</u>, 407 F.3d 674, 683 (4th Cir. 2005) [inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the Defendant]; <u>Jones v. Bock</u>, 127 S.Ct. 910 (2007). To meet this burden, Defendants point to Kathryn Harrell's affidavit, Plaintiff's jail records attached thereto as exhibit A, and to the statements Plaintiff's himself makes in his verified compliant (wherein Plaintiff

---

[5](...continued)
        confinement in prison.

<u>Hartsfield v. Vidor</u>, 199 F.3d 305, 308 (6th Cir. 1999) (quoting 18 U.S.C. § 3262(g)(2)); <u>Almandiv v. Ridge</u>, 201 Fed.Appx. 865 at *2 (3d Cir. 2006); <u>Neal v. Goord</u>, 267 F.3d 116, 2001 WL 1178293 (2d Cir. Oct 04, 2001) (quoting <u>Lawrence v. Goord</u>, 238 F.3d 182, 185 (2d Cir. 2001) (*per curiam*)).



concedes that the has not received a final response to his grievances). Plaintiff argues, however, that he failed to receive responses to many of his grievances, as well as that correctional officers have refused to process some of his grievances.

After review of the exhibits provided to the Court as well as the arguments presented by the parties, the undersigned concludes that the Defendants have not established entitlement to summary judgment on the basis of failure to exhaust administrative remedies with respect to Plaintiff's shower claim, even if that grievance has yet to be fully exhausted. This event allegedly occurred on May 12, 2008. Plaintiff asserts in his verified amended complaint that he filed a grievance with respect to this matter on May 27, 2008, but as of the filing of the amended complaint (which is dated September 18, 2008), Plaintiff had still not received a response to this grievance. See Verified Amended Complaint, ¶ II. Plaintiff has attached a copy of this grievance to his amended complaint, which shows receipt of this grievance by the jail administration on May 27, 2008, but which contains no response. Although, upon review, it is certainly arguable that this grievance relates only to complaints about the medical care Plaintiff was receiving for injuries suffered as a result of his slip and fall in the shower, and not about the slip and fall itself, one of the several May 2008 grievances Plaintiff has attached to his memorandum in opposition to Defendants' motion for summary judgment specifically talks about the Defendants' alleged negligence for failing to put proper place mats in and out of the shower. See Grievance dated May 20, 2008. This grievance also does not have any response listed.[6]

_____

[6]Plaintiff has also provided as an exhibit to his reply brief filed February 10, 2009 a grievance which again discusses the failure of the Defendants to provide safety mats outside the shower. However, that grievance is dated August 29, 2008, and shows a grievance response of September 8, 2008. Since this grievance is dated after the filing of this case, it has not been considered. See
(continued...)



Defendants have not countered Plaintiff's evidence, nor have they provided any explanation for the grievances Plaintiff has filed which show no response to his grievances. Indeed, Harrell attests in her affidavit that she was not even aware of any grievances Plaintiff had filed referencing the showers at the detention center. Given this evidence, and that two months time had expired between Plaintiff's fall and the filing of Plaintiff's original complaint on August 1, 2008, and almost four months had expired between this event and the filing of Plaintiff's amended complaint, the undersigned finds that this evidence presents a sufficient genuine issue of fact as to whether the Plaintiff made a good faith attempt to exhaust a grievance with respect to his shower claim prior to filing this lawsuit to survive summary judgment. See Boyd v. Corrections Corp. of America, 380 F.3d 989, 996 (6th Cir. 2004) [ administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance], cert. denied, 544 U.S. 920 (2005); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) [stating that prison's failure to timely respond renders administrative remedies unavailable]; cf. Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir. 2001) [holding that defendants failed to prove non-exhaustion where they presented no evidence to refute plaintiff's contention that he could not pursue grievance further after warden did not respond to his grievance]. Therefore, Plaintiff's claim relating to the showers at the detention center is properly before this Court for disposition.

However, with respect to Plaintiff's claim relating to the snake found in Inmate Nelson's food, the undersigned finds that the Defendants have met their burden of showing a failure

---

<sup>6</sup>(...continued)
Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005) [Prisoner may not file a lawsuit before exhausting his administrative remedies, even if he exhausts those remedies while the litigation is pending.]



to exhaust this claim. Plaintiff himself does not even reference this claim, or having filed a grievance thereon, in either his original complaint or his amended complaint. Indeed, this event did not even occur until *after* the submission of the original complaint in this action on August 1, 2008 (complaint dated July 28, 2008). As for the amended complaint, it was dated and filed only fourteen (14) days after the event involving the snake allegedly took place. Further, the only grievance submitted which references this event (attached as an exhibit to Defendants' motion for summary judgment filed January 16, 2009), is dated September 26, 2008, after even the amended complaint in this action was submitted.

Plaintiff is not allowed to file a civil lawsuit in this Court while a grievance concerning the claim encompassed in that lawsuit is still pending, or indeed before the grievance has even been filed with prison authorities. Cannon, 418 F.3d at 719 [Prisoner may not file a lawsuit before exhausting his administrative remedies, even if he exhausts those remedies while the litigation is pending.]; Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999) [Prisoner "may not exhaust administrative remedies during the pendency of the federal suit."]. Therefore, the Defendants' evidence, and indeed Plaintiff's own verified amended complaint as well as his exhibits, support a finding by this Court that Plaintiff failed to exhaust his administrative remedies with respect to his "snake" claim prior to filing this lawsuit. Cf. Hyde v. South Carolina Dep't of Mental Health, 442 S.E.2d 582, 583 (1994) ["Where an adequate administrative remedy is available to determine a question of fact, one must purse the administrative remedy or be precluded from seeking relief in the courts"]; see also Harvey v. City of Philadelphia, 253 F.Supp.2d 827, 829 (E.D.Pa. 2003)[Summary judgment granted where Plaintiff claimed to have exhausted administrative remedies, but did not present any evidence to challenge defendants' evidence that he did not pursue his administrative

- 13 -



remedies].

Therefore, Plaintiff's "snake" claim should be dismissed, without prejudice. Plaintiff may proceed only with his claim regarding the slip and fall in the shower. Jones v. Bock, 127 S. Ct. at 923-925 [Where prisoner asserts both exhausted and unexhausted claims in a lawsuit, Court should proceed to consider exhausted claims rather than dismiss entire lawsuit].

## II.

With respect to Plaintiff's claim concerning the slip and fall in the shower, in order to show that any named Defendant violated his constitutional rights with respect to this claim, Plaintiff must show not only that the deprivation alleged was "objectively significantly serious", but that the defendant acted with a "sufficiently culpable state of mind". See Shakka v. Smith, 71 F.3d 162,166 (4th Cir. 1995) [in order to state a constitutional violation, the deprivation alleged must not only be "objectively significantly serious", but the Defendant must also have acted with a "sufficiently culpable state of mind"]; Stanley v. Hejirika, 134 F.3d 629, 634 (4th Cir. 1998), (citing Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996)); see also Farmer v. Brennan, 114 S.Ct. 1970, 1979 (1994) [A defendant must have engaged in conduct "for the very purpose of causing harm or with the knowledge that harm [would] result"]; Pruitt v. Moore, No. 02-395, 2003 WL 23851094 at *9 (D.S.C. July 7, 2003) [only deliberate or callous indifference on the part of prison officials to a specific known risk of harm states on Eighth Amendment claim], cert. denied, 2004 WL 232748 (4th Cir. 2004).[7] Plaintiff has failed to present any such evidence. Indeed, Plaintiff's own grievance

---

[7]As Plaintiff was apparently a pre-trial detainee during the time period set forth in the complaint, his claim is evaluated under the due process clause of the Fourteenth Amendment. Bell v. Wolfish, 441 U.S. 520, 535 (1979). The Eighth Amendment is used to evaluate conditions of confinement for those convicted of crimes. However, for purposes of consideration of Plaintiff's
(continued...)



referencing this event complains that the Defendants were, at most, "negligent" in failing to provide mats in the shower. While such a claim could conceivably proceed as a state law tort claim, even assuming that one or both of the defendants was negligent as alleged by the Plaintiff, that is not sufficient to allow Plaintiff to proceed with his federal claim. Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999)["Deliberate indifference is a very high standard - a showing of mere negligence will not meet it."]; A.P. ex rel. Bazerman v. Feaver, No. 04-15645, 2008 WL 3870697 at *12 (11th Cir. Aug. 21, 2008)["[D]eliberate indifference requires a much higher standard of fault than mere or even gross negligence . . . ."]; see also DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care].

Regrettably, shower "slip and falls" are not an uncommon occurrence in society, and are certainly not unique to jails. However, even assuming the allegations of Plaintiff's amended complaint that the shower area was slick due to water not having completely drained out of the shower area, causing him to slip on the floor, to be true for purposes of summary judgment, the undersigned cannot discern how such an unfortunate event rises to the level of a constitutional violation. Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997)["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"]. Plaintiff cannot simply state that the shower floor

---

[7](...continued)
claim, the standard of whether Plaintiff's constitutional rights were violated is essentially the same. See Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988)[Holding that the Fourteenth Amendment guarantees at least Eighth Amendment protections].



having been slippery amounts to a constitutional violation, present no supporting evidence, and expect to survive summary judgment on this claim. <u>See</u> <u>Rish v. Johnson</u>, 131 F.3d 1092, 1096 (4th Cir. 1997) ["only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement"]; <u>Bagola v. Kindt</u>, 131 F.3d 632, 646 (7th Cir. 1997) ["Although prison officials need not intend that a known risk will actually harm an inmate, they must intentionally ignore this known risk in order to be liable under the Eighth Amendment."]; <u>see</u> <u>also</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)[Courts need not assume the truth of legal conclusions couched as factual allegations.]; <u>House v. New Castle County</u>, 824 F.Supp. 477, 485 (D.Md. 1993)[Plaintiff's conclusory allegations insufficient to maintain claim].

Therefore, this claim should be dismissed.

### Conclusion

Based on the foregoing, it is recommended that the Defendants' Motion for Summary Judgment be **granted**, with prejudice, with respect to Plaintiff's claim concerning the slip and fall in the shower. With respect to Plaintiff's claim regarding the snake found in Inmate Nelson's food, that claim should be **dismissed**, without prejudice, for failure to exhaust. 42 U.S.C. § 1997(e)(a); <u>Jones v. Bock</u>, 127 S.Ct. at 925-926.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

July 15, 2009
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

